UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAWRENCE J. SMITH, : | |
| Plaintiff : | CIVIL ACTION NO. 3:11-0883 |
| v. : | |
| MICHAEL J. ASTRUE, : | (NEALON, D.J.) |
| Commissioner of Social Security, : | (MANNION, M.J.) |
| Defendant : | |

**REPORT AND RECOMMENDATION**

The record in this action has been reviewed pursuant to 42 U.S.C. §405(g) to determine whether there is substantial evidence to support the Commissioner's decision to deny the plaintiff's claim for Social Security Disability Insurance Benefits, ("D.I.B."), and Supplemental Security Income ("S.S.I.") under Titles II and XVI of the Social Security Act, ("Act"), respectively. 42 U.S.C. §§401-433, 1381-1383f.

**I. PROCEDURAL BACKGROUND**

The plaintiff protectively filed applications for D.I.B. and S.S.I. on May 30, 2007, alleging disability since April 30, 2007. (TR. 134-42). The state agency denied the plaintiff's applications initially on September 5, 2007. (TR. 114-23). The plaintiff requested a hearing on October 25, 2007, and one was held before an administrative law judge, ("A.L.J."), on December 9, 2008, at which the plaintiff was represented by counsel. (TR. 40-110). In addition to the

plaintiff's testimony, the A.L.J. heard the testimony of Carmine Abraham, an impartial vocational expert. On January 29, 2009, the A.L.J. issued an unfavorable decision. (TR. 14-24).

The plaintiff requested review of the A.L.J.'s decision. (TR. 11-13). On March 14, 2011, the Appeals Council denied the request for review. (TR. 1-6). Thus, the A.L.J.'s decision became the final decision of the Commissioner. 42 U.S.C. §405(g). Currently pending is the plaintiff's appeal of the Commissioner's decision, filed on May 10, 2011. (Doc. No. 1).

## II. DISABILITY DETERMINATION PROCESS

A five-step process is required to determine if an applicant is disabled under the Act. The Commissioner must sequentially determine:  (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work, and; (5) whether the applicant's impairment prevents the applicant from doing any other work. 20 C.F.R. §§404.1520, 416.920.

The instant decision was ultimately decided at the fifth step of the process, when the A.L.J. concluded that the plaintiff was not disabled because he could perform a limited range of medium work activity. (TR. 23-24).

## III.  THE A.L.J.'S DECISION

Using the above-outlined procedure, the A.L.J. found that the plaintiff met the insured status requirements of the Act through March 31, 2009; the plaintiff had not engaged in substantial gainful activity since April 30, 2007, the alleged onset date; the plaintiff had severe impairments in the form of status-post left shoulder partial rotator cuff tear with tendinitis; the plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404 Subpt. P, App. 1,; the plaintiff had the residual functional capacity to perform medium work as defined in 20 C.F.R. §§404.1567(c) and 416.967(c) except pushing and/or pulling was limited in the upper extremities to the weight classification, but the left upper extremity could only be used less than frequently for pushing and/or pulling; foot controls were not limited; the plaintiff could not climb ropes, ladders, or scaffolds, but was not limited in climbing ramps or stairs; the plaintiff was able to balance, stoop, crouch, crawl and kneel without limitation; the plaintiff could not perform continuous movement of his neck, but could occasionally to frequently move his neck; the plaintiff could less than frequently reach overhead with the left upper extremity and had no limitation with grasping, feeling and handling; and the plaintiff must avoid concentrated exposure to cold temperatures; the plaintiff was unable to perform any of his past relevant work; the plaintiff was born on March 15, 1954, and was fifty-three (53) years old, which was defined as an individual closely approaching

3

advanced age, on the alleged disability onset date; the plaintiff subsequently changed age category to advanced age; the plaintiff had a marginal education and was able to communicate in English; transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that the plaintiff was "not disabled," whether or not the plaintiff had transferable job skills; considering the plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy which the plaintiff could perform; and the plaintiff had not been under a disability, as defined in the Act, from April 30, 2007, through the date of the A.L.J.'s decision. (TR. 19-24).

**IV. EVIDENCE OF RECORD**

The plaintiff was fifty-three (53) years old, an individual closely approaching advanced age under the Act, at the time of his alleged onset date. 20 C.F.R. §§404.1563, 416.963. He has a ninth grade school education with no general equivalency diploma, ("GED"), having been obtained.

The plaintiff has alleged disability since April 30, 2007[1]. The medical

---

[1]The court notes that the plaintiff filed a subsequent application for benefits, which was granted. The plaintiff was found eligible for S.S.I. benefits as of March 2010 and D.I.B. benefits as of July 2009. Thus, the relevant time period for purposes of the instant action is from April 30, 2007, the original alleged onset date, until July 2009, the date the plaintiff was granted D.I.B. benefits.

evidence of record, as summarized by the parties and the A.L.J., establishes that on November 20, 2002, the plaintiff treated at the Community Medical Center, ("CMC"), Emergency Department after having been involved in a motor vehicle accident. The plaintiff suffered a fracture of the left maxilla into the left maxillary sinus with comminuted fractures of the nasal bones. (TR. 202-14). Radiological studies of the cervical spine indicated an impression of spurs and moderate intervertebral disc space narrowing at C5-6, indicating degenerative disc disease. (TR. 210).

On November 27, 2002, the plaintiff was admitted to CMC for post severe pain in the face and mouth area, as well as testicular pain. (TR. 215-26). A rhinoscopic evaluation revealed a septal deviation to the right side without septal hematoma and nondisplaced fractures of the mid-face which required no further surgical intervention. (TR. 220). The plaintiff was discharged on November 29, 2002.

The plaintiff treated with Barry Minora, M.D., from April 2007 through September 2008, for complaints of left shoulder pain. (TR. 227-39, 315-31).

On May 14, 2007, Dr. Minora ordered a left shoulder x-ray which showed suspected calcific tendinitis or bursitis and mild degenerative disease of the left shoulder. (TR. 239, 344).

On May 22, 2007, upon referral of Dr. Minora, the plaintiff treated with Chad Ghigiarelli, M.D., of Scranton Orthopaedic Specialists. (TR. 256). At that time, Dr. Ghigiarelli noted his impression of calcific tendinitis, left shoulder and

left AC joint arthritis. (Id.). It was recommended that the plaintiff undergo an MRI to rule out rotator cuff tear. The plaintiff subsequently underwent an MRI which showed an attenuated appearance to the supraspinatus tendon which was noted to possibly be attributable to post-surgical change; a partial versus small full thickness tear could not be excluded; and a hypointense T1 signal was noted in the region of the supraspinatus tendon suspect for calcific tendinitis. (TR. 238, 343).

On June 7, 2007, Dr. Ghigiarelli noted a partial thickness tear in the rotator cuff. Upon examination, Dr. Ghigiarelli noted some impingement signs, but indicated that the plaintiff's motion was only slightly restricted in internal rotation. The plaintiff was found to have fairly good cuff strength with some pain on resistance and was noted to be neurovascularly intact. (TR. 257). The plaintiff was given a left shoulder injection, which the plaintiff indicated was effective in resolving his pain and enabling him to regain function. (TR. 257, 369).

The plaintiff was recommended for and underwent physical therapy at Allied Rehabilitation Services, ("Allied"), from June 22, 2007, through July 27, 2007. (TR. 240-55). Upon examination, no signs of muscle atrophy or growth disturbance were noted. (TR. 240-55). The plaintiff's goals were to increase strength and range of motion of the left arm and shoulder. While the plaintiff made improvement during therapy, it was noted that he requested to be discharged from therapy before all goals were met. (TR. 252, 254, 255).

On August 7, 2007, the plaintiff treated with Dr. Ghigiarelli who noted that the plaintiff showed improvement and would be treated conservatively. (TR. 258). Upon examination, the plaintiff's motion was excellent, there was no impingement signs, plaintiff had good cuff strength and was neurovascularly intact. (TR. 258).

On August 24, 2007, based upon a review of the medical evidence of record, Louis Bonita, M.D., completed a residual functional capacity assessment on the plaintiff which indicated that the plaintiff could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk about 6 hours in an 8 hour workday; sit about 6 hours in an 8 hour workday; and that plaintiff's ability to push/pull was limited with respect to his left arm. (TR. 259-65). Dr. Bonita opined that the plaintiff was limited in his ability to reach in all directions, including overhead. (TR. 261). Finally, Dr. Bonita opined that the plaintiff had no postural limitations, visual limitations, communicative limitations, or environmental limitations. (TR. 260-61).

On October 8, 2007, the plaintiff began another course of physical therapy for his left shoulder pain. He was discharged from therapy on October 31, 2007. (TR. 349-68).

On October 25, 2007, Dr. Ghigiarelli treated the plaintiff for continued complaints of left shoulder pain. Arthroscopy was discussed and scheduled.

On November 28, 2007, the plaintiff was admitted to the Moses Taylor Hospital Short Stay Procedure Unit wherein Dr. Ghigiarelli performed a

7

surgical arthroscopy of the left shoulder. (TR. 268). The procedure revealed a small partial rotator cuff tear, which Dr. Ghigiarelli debrided back to a stable base. (TR. 269). The plaintiff was discharged that same day.

On December 6, 2007, Dr. Ghigiarelli followed up with the plaintiff post-surgery.

On December 27, 2007, Dr. Ghigiarelli noted that, although the plaintiff was improving, he had continued complaints of pain and was not yet ready for physical therapy.

The plaintiff treated with Dr. Ghigiarelli in January 2008, at which time there was noted improvement in the plaintiff's condition and he was set for physical therapy through Allied.

On February 11, 2008, the plaintiff again underwent physical therapy at Allied after having undergone the arthroscopic procedure. In March 2008, the plaintiff reported that he was "feeling good" and that his shoulder was "okay." (TR. 395, 398). The plaintiff underwent therapy through April 16, 2008, when he requested to be discharged from therapy. (TR. 369-409).

On March 26, 2008, Dr. Minora ordered an MRI of the cervical spine the results of which were noted to be limited due to motion artifact. However, diffuse disc bulging was noted at C6-C7 with a superimposed right paracentral disc protrusion which appeared to cause minimal flattening of the spinal cord. Severe bilateral neural foraminal narrowing was noted. (TR. 341-42).

On April 28, 2008, Dr. Minora ordered a CT scan of the plaintiff's brain due to his complaints of vertigo. The scan showed no acute intracranial abnormality and minimal chronic appearing paranasal sinus disease. (TR. 340).

On May 28, 2008, the plaintiff treated with P. Shripathi Holla, M.D., a neurological surgeon, for evaluation of his complaints of dizziness. (TR. 345). Upon examination, it was noted that the plaintiff had normal station and gait; his cranial nerves were unremarkable; and his motor, sensory and cerebral systems were normal. (TR. 345). Dr. Holla concluded that the plaintiff's dizziness was not related to either neck or structural lesions and recommended that the plaintiff consult with an ear, nose and throat specialist to rule out an inner ear problem. (TR. 345).

On October 14, 2008, a scrotal ultrasound was conducted due to the plaintiff's complaints of testicular pain. The ultrasound showed left varicocele[2]. (TR. 339).

## V. DISCUSSION

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3rd Cir. 1988); Mason v. Shalala, 994 F.2d

---

[2] A varicocele is an enlargement of the veins of the spermatic cord commonly occurring above the left testicle. Taber's Cyclopedic Medical Dictionary at 2211 (19th ed. 2001).

9

1058 (3rd Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

In his appeal, the plaintiff challenges the A.L.J.'s residual functional capacity assessment. Specifically, he argues that the A.L.J. should have found him capable of engaging in only sedentary work activity. The plaintiff

argues that such a finding would have, in turn, led to the application of Rule 201.11 of the Medical Vocational Guidelines[3], which considering his advanced age, would have resulted in a determination of disability.

Residual functional capacity refers to what a plaintiff can do despite his limitations. 20 C.F.R. §§404.1545(a), 416.945(a). It is the plaintiff's burden to present evidence showing how his alleged impairments limit his ability to work. See 20 C.F.R. §§404.1512(c), 416.912(c). In determining the plaintiff's residual functional capacity, the A.L.J. must consider all relevant evidence, including the medical evidence of record and the plaintiff's subjective complaints. 20 C.F.R. §§404.1545(a), 416.945(a) . The final responsibility for determining a plaintiff's residual functional capacity is reserved for the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §§404.1527(e)(2), (3), 416.927(e)(2). At the hearing level, the responsibility for determining a plaintiff's residual functional capacity is reserved for the A.L.J. 20 C.F.R. §§404.1546, 416.946.

Upon review of the record, substantial evidence supports the A.L.J.'s residual functional capacity determination. Initially, there is no indication from the record that the plaintiff presented any medical evidence identifying his functional limitations. Moreover, the only residual functional capacity

---

[3]The guidelines consider an individual's ability to perform a range of work in light of the individual's vocational factors, including age, education and work history. S.S.R. 83-12. Rule 201.11 applies only to sedentary work. 20 C.F.R. pt. 404, Subpt. P, App. 2, Rule 201.11

11

assessment in the record is that from Dr. Bonita, who opined upon review of the medical evidence that the plaintiff could perform the equivalent of medium work activity with some limitations. (TR. 259-65). This opinion is supported by the medical evidence of record, including the findings of Drs. Minora and Ghigiarelli as set forth above. The finding is also consistent with the plaintiff's rehabilitative service treatment notes during which the plaintiff indicated that he was "feeling good" and that his shoulder was "okay." Objective findings during those services indicate that the plaintiff had no signs of atrophy or growth disturbance. (TR. 240-55). The A.L.J.'s finding is also consistent with the plaintiff's subjective reports of activities, which indicate that he is able to drive, attends car races with his brother, goes to church on a regular basis, reads, shops, watches television, socializes with friends and neighbors, and prepares his own meals. (TR. 75, 77, 175-78). In light of the medical evidence of record, as well as the plaintiff's subjective reports of activities, the residual functional capacity finding of the A.L.J. is supported by substantial evidence in the record and the plaintiff's appeal should be denied on this basis.

## VI. RECOMMENDATION

Based on the foregoing, **IT IS RECOMMENDED THAT:**

the plaintiff's appeal from the decision of the Commissioner of Social Security be **DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** August 22, 2012

O:\shared\REPORTS\2011 Reports\11-0883-01.wpd